**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JENNIFER CONIDI, individually and on behalf of all others similarly situated, | Case No. 1:23-cv-02765 |
| Plaintiff, | Honorable Judge Nancy L. Maldonado |
| v. | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| BEAUTY INDUSTRY GROUP OPCO, LLC d/b/a LUXY HAIR CO.; LUXY HAIR CO.; and DOES 1-10, inclusive, | **JURY DEMANDED** |
| Defendants. | |

Now comes the Plaintiff, JENNIFER CONIDI ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, and for her First Amended Class Action Complaint against the Defendants, BEAUTY INDUSTRY GROUP OPCO, LLC d/b/a LUXY HAIR CO., LUXY HAIR CO., and DOES 1-10 (collectively, "Defendants"), Plaintiff alleges and states as follows:

## PRELIMINARY STATEMENTS

1.       This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, resulting from the illegal actions of Defendants in negligently, intentionally, and/or recklessly collecting, storing, and/or using Plaintiff's and other similarly situated individuals' biometric identifiers and biometric information without developing a public policy establishing a retention schedule, establishing guidelines for destroying biometric identifiers and biometric information, informing Plaintiff of the specific purpose and length of term for which the

information was being stored, or receiving a written release executed by Plaintiff, in violation of BIPA.

2.      Defendants obtained Plaintiff's and the class members' biometrics via a "Virtual Color Match" tool on Defendants' website, https://www.luxyhair.com/pages/virtual-color-match (the "Website"). Defendants have violated BIPA through their undisclosed and unconsented capture, collection, dissemination, profiting from, and use of such biometrics.

3.      Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

4.      Plaintiff is an individual who was at all relevant times residing in Wheeling, Illinois.

5.      On information and belief, Defendant BEAUTY INDUSTRY GROUP OPCO, LLC d/b/a LUXY HAIR CO. ("BIGO") is a Utah limited liability company, which conducts substantial business in and markets its products and services throughout Illinois, including within the Northern District of Illinois. BIGO sells hair extensions and other products through its website, luxyhair.com, and sells and ships its products to customers located in Illinois on a regular basis.

6.      On information and belief, Defendant LUXY HAIR CO. ("Luxy") is a Canadian Extra-Provincial Domestic Corporation organized under the laws of Nova Scotia, which conducts substantial business in and markets its products and services throughout Illinois, including within the Northern District of Illinois. Luxy sells hair extensions and other products through its website, luxyhair.com, and sells and ships its products to customers located in Illinois on a regular basis.

7.      The true names and capacities of the Defendants sued herein as Does 1-10 are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of

2

the Defendants designated herein as a Doe is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave to amend her complaint to reflect the true names and capacities of the Doe Defendants when such identities become known.

8.      Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

9.      On information and belief, at all times relevant hereto, BIGO and Luxy were engaged in the manufacturing, marketing, and sale of hair extensions and related products.

10.      BIGO and Luxy are both a "private entity" as defined in 740 ILCS 14/10, as they are each a "partnership, corporation, limited liability company, association, or other group, however organized."

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which at least one member of the proposed class of plaintiffs is a citizen of a State different from Defendants within the meaning of 28 U.S.C. § 1332(d), and the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.

12.      This Court has personal jurisdiction over Defendants because the alleged acts and conduct that are the subject of this action occurred in Illinois and Defendants regularly conduct business in Illinois, target business activity in Illinois, ship their products into Illinois, and

purposefully avail themselves of the laws, protections, and advantages of doing business in Illinois with Illinois consumers like Plaintiff.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this District within the meaning of 28 U.S.C. § 1391(c)(2), and pursuant to 28 U.S.C. § 1391(b)(2) because this a substantial part of the events and omissions giving rise to the claims occurred in this District.

## FACTS COMMON TO ALL COUNTS

**A. BIPA's Requirements of Notice and Informed Consent Involving Biometric Identifiers and Information**

14. Every person has unique features by which they can be identified using a set of standard quantitative measurements, referred to as "biometric identifiers." For example, the shape of and distance between tiny ridges on each person's fingers are unique, so measurements of those features can be used to identify a specific individual.

15. Each person also has a unique facial geometry composed of, among other measures, distances between key facial landmarks (such as your eyes, nose, etc.) and ratios between those distances. Once a picture of a person's face is scanned and its biometric measurements are captured, computers can store that information and use it to identify that individual any other time that person's face appears on the internet or in public.

16. In enacting BIPA, the Illinois General Assembly found all of the following.

    (a) The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.

    (b) Major national corporations have selected the City of Chicago and other locations in [Illinois] as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias.

4

(c)     Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

(d)     An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.

(e)     Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.

(f)     The full ramifications of biometric technology are not fully known.

(g)     The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

740 ILCS 14/5.

17.     The Illinois Supreme Court has recognized that BIPA was enacted to preserve an individual's right to privacy and control over their biometric data.

> Through the Act, our General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information. … The duties imposed on private entities by section 15 of the Act regarding the collection, retention, disclosure, and destruction of a person's or customer's biometric identifiers or biometric information define the contours of that statutory right. Accordingly, when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach. … The Act vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent. ... When a private entity fails to adhere

> to the statutory procedures, as defendants are alleged to have done here, the right of the individual to maintain his or her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized. This is no mere "technicality." The injury is real and significant.

*Rosenbach v. Six Flags Entertainment Corporation*, 2019 IL 123186 at ¶¶ 33-34, 129 N.E.3d 1197, 1206 (2019) (internal citations and quotations omitted).

18.     BIPA defines a "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10 (emphasis added).

19.     BIPA defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

20.     BIPA was designed to encourage the public trust in biometric technology and the use and adoption of biometric identifier-facilitated transactions and to prevent harm to individuals, by requiring companies to adopt and publish retention schedules and guidelines for permanently destroying biometrics. 740 ILCS 14/15 (a)-(b).

21.     BIPA prohibits the collection of such information without prior express written informed consent.

> No private entity may collect, capture, purchase receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
>
> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b).

22.     BIPA also requires that private entities possessing such information develop special written policies establishing specific retention guidelines and make these policies available to the public.

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

23.     Even if a private entity first obtains this information with informed consent and provides the required written policy, BIPA in turn limits the further disclosure or redisclosure of this information without express consent. 740 ILCS 14/15(d).

24.     Separate from the disclosure and consent requirements, BIPA prohibits any sale, trade, or profiting from this specially protected information irrespective of any informed consent. "No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

25.     BIPA gives any person aggrieved by a violation of BIPA a private right of action, with liquidated damages for each violation. 740 ILCS § 14/20.

26.     BIPA provides for statutory liquidated damages of $1,000 for each negligent violation, or actual damages, whichever is greater. 740 ILCS § 14/20(1). Alternatively, BIPA

7

provides for statutory liquidated damages of $5,000 for each intentional and/or reckless violation, or actual damages, whichever is greater. 740 ILCS § 14/20(2).

27.     BIPA allows a prevailing party to recover reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses. 740 ILCS § 14/20(3). BIPA further provides for and injunction as the Court may deem appropriate. 740 ILCS § 14/20(4).

28.     Persons, like the Plaintiff herein, have an interest in protecting, monitoring, and controlling their biometric identifiers and information beyond the typical concerns and interests associated with protecting other types of personal identifying information.

29.     Information about retention and destruction of biometric identifiers and information is key to encouraging trust in biometric identifier-facilitated transactions, and is essential to Plaintiff's ability to monitor, protect, and control her biometric identifiers and information.

**B.     Defendants' Virtual Color Match Tool**

30.     Defendants' Website contains a Virtual Color Match tool[1], which scans the consumer's facial geometry and uses the facial geometry obtained from the photo to display the virtual hair product in the appropriate location on the face depicted.

31.     Using augmented reality technology, Defendants' Virtual Color Match tool allows consumers to virtually try on hair products to get an impression of how the hair products would look on the consumer in person.

32.     Alternatively, the consumer may upload an existing photograph to Defendants' Website. The Virtual Color Match tool then scans the uploaded photograph and uses the facial

---

[1] https://www.luxyhair.com/pages/virtual-color-match

geometry obtained from the photo to display the virtual hair product in the appropriate location on the face depicted.

33.     The Virtual Color Match tool scans the face in each photo to detect facial features or landmarks and calculates a unique digital map of those features (i.e. a face template) based on the geometric attributes captured from the photo, such as the distance between and location of various facial features. Accordingly, each face template constitutes a "biometric identifier" as defined in 740 ILCS 14/10.

34.     Much like fingerprints, voiceprints, and retinal patterns, each face template is unique to, and can be used to identify, a particular person.

35.     The Virtual Color Match tool uses the scan of the facial geometry or face template to apply or place the virtual hair product onto the appropriate location of the face from the photo.

36.     The Virtual Color Match tool simulates what the consumer would look like wearing the hair product by using the facial geometry or landmarks scanned from the photo to locate the consumer's nose, eyes, and other facial features, virtually place the hair product onto the appropriate location of the face depicted, and display it there.

37.     On information and belief, Defendants' hair product sales have increased since Defendants began offering the Virtual Color Match tool on their Website.

38.     The scan of facial geometry and/or data derived from it is how the Virtual Color Match tool knows exactly where on the consumer's face to overlay or display the digital image of the hair product the consumer is virtually trying on, which the Virtual Color Match tool does accurately each time it is used.

39.     Defendants store the face templates extracted from the photographs used in connection with the Virtual Color Match tool in a database or other computer-based system that

Defendants can access but consumers such as the Plaintiff cannot. This is an automated process that occurs without the consumer's involvement or consent whenever a photograph is uploaded or used in connection with the Virtual Color Match tool.

40. Consumers cannot disable this technology, nor can they prevent Defendants from harvesting their biometric identifiers (i.e. scans of face geometry) whenever a photograph is uploaded or used for the Virtual Color Match tool.

41. Because disabling this feature is not an option, use of the Virtual Color Match tool is conditioned on the collection of biometric identifiers and information.

42. Defendants indiscriminately collect and capture biometric identifiers and information of all consumers who appear in any photo uploaded or used for the Virtual Color Match tool.

43. Defendants discloses those biometric identifiers and information to third-party service providers, business partners and marketing partners, as well as Defendants' affiliated companies, for commercial and other purposes.

44. Defendants' Website allows consumers to create accounts.

45. Defendants enter into a contractual relationship with each Illinois resident who makes a purchase from Defendants.

46. Defendants' Website requires consumers who make a purchase to enter a shipping address, including the state and zip code. Illinois is one of the State options from which consumers must choose.

47. Defendants' Website offers shipping to every state in the United States and several U.S. Territories.

48.     Defendants knowingly and intentionally ship their physical products into Illinois on a regular basis.

49.     Defendants developed the Virtual Color Match tool in order to compete with other hair product retailers and increase their sales.

50.     Defendants' Virtual Color Match tool was at all relevant times available via Defendants' luxyhair.com Website.

51.     Defendants have complete and exclusive control over the biometric identifiers and information collected, captured, and stored by consumers' use of the Virtual Color Match tool, including whether biometric identifiers are collected and captured; which biometric identifiers are collected and captured; the type of biometric identifiers that are collected and captured, and the format in which they are stored; the software that is used to collect and capture the biometric identifiers; which biometric identifiers are saved; whether biometric identifiers and information are disclosed and to whom; whether information based on biometric identifiers is used to identify users (thus creating biometric information); where biometric identifiers and information are stored; how long biometric identifiers and information are stored; and whether biometric identifiers and information are encrypted or otherwise protected.

52.     The users of the Virtual Color Match tool have no ability to control the biometric identifiers and information collected, captured, and stored.

53.     The users of the Virtual Color Match tool cannot disable the collection of biometric identifiers or limit what data is collected or captured.

54.     Thus, Defendants fully control, and thus, possesses the biometric identifiers and information obtained from photos taken and uploaded in connection with the use of the Virtual Color Match tool on Defendant's Website.

C.      **Plaintiff's Personal Experience With the Tool**

55.     On or about February 7, 2023, while located in Illinois, Plaintiff visited the Website to search for some new hair colors and products.

56.     In order for Plaintiff to virtually "try on" Defendants' products using Defendants' augmented reality Virtual Color Match tool, Defendants required Plaintiff to either upload a preexisting photo of her face, or turn on and use the camera on her computer or mobile device to take a new photo of her face to upload.

57.     Plaintiff used the Virtual Color Match tool, which accessed her mobile device or laptop's camera and took a photograph of her face.

58.     The Virtual Color Match tool identified the shape and features of Plaintiff's face (i.e. her facial geometry) to accurately overlay the hair product onto Plaintiff's facial image.

59.     In doing so, Defendants' Virtual Color Match tool collected, captured, and used Plaintiff's biometric identifiers and biometric information (e.g. scans of her facial geometry; face templates).

60.     The Virtual Color Match tool accurately simulated what Plaintiff would look like wearing Defendant's hair products by using her facial geometry and/or landmarks obtained from the photo to locate the appropriate facial features and display the hair product in the appropriate location.

61.     Defendants also disclosed and redisclosed Plaintiff's biometric identifiers and information to third-party service providers, business partners, marketing partners, affiliates, and/or other companies and individuals.

**D.      Defendants' Violations of BIPA**

62.      Plaintiff's facial geometry is unique to her and is a biometric identifier that can be used to identify her.

63.      A scan of facial geometry is biometric identifier or biometric information regardless of whether it is derived from a real time scan through a user's computer or mobile device camera or from a preexisting photograph.

64.      Prior to taking Plaintiff's, and other Illinois residents', biometric identifiers and/or biometric information, Defendants did not inform them, in writing or otherwise, that their biometric identifiers and/or biometric information were being captured, collected, stored, used, obtained, or disseminated.

65.      Defendants did not seek, and Plaintiff and other Illinois residents were never provided, informed written consent relating to the collection, capture, use, storage, dissemination, or disclosure of their biometric identifiers and/or biometric information.

66.      Defendants did not publish any policy specifically about the collection, retention, use, deletion, or dissemination of such biometric identifiers and/or biometric information.

67.      In fact, Defendants did not publish any policy as to a biometric retention schedule or guidelines for permanently destroying biometric identifiers and/or biometric information.

68.      By failing to comply with BIPA, Defendants violated the substantive rights of Plaintiff and other Illinois residents to maintain control over the privacy of their biometric identifiers and biometric information.

69.      As a result, Defendants injured Plaintiff and other Illinois residents by depriving them of the power and ability to make informed decisions about the collection, storage, and use of their biometric information and biometric identifiers.

70. Defendants' acts and omissions outlined herein denied Plaintiff and other Illinois residents the opportunity to consider whether the terms of Defendants' collection, capture, storage, use, and disclosure of their biometric identifiers and biometric information were acceptable given the attendant risks, denied them the opportunity to avoid the collection, capture and disclosure of their data, denied them the ability to object to the way their data was being handled, and denied them the ability to use the undisclosed information in the way BIPA envisioned, all of which harmed their concrete interests that the Illinois legislature sought to protect when it enacted BIPA.

71. In direct violation of BIPA, 740 ILCS 14/15(b)(1), Defendants never informed or disclosed to Plaintiff and other Illinois residents that they were capturing, collecting, and storing Plaintiff's biometric identifiers and biometric information.

72. In direct violation of BIPA, 740 ILCS 14/15(b)(2), Defendants never informed Plaintiff and other Illinois residents of the specific purpose and length of time for which Defendants were collecting, storing, and using their biometric identifiers and biometric information.

73. In direct violation of BIPA, 740 ILCS 14/15(b)(3), Defendants never obtained a written release executed by Plaintiff and other Illinois residents prior to collecting, capturing, storing, and using their biometric identifiers or biometric information.

74. Defendants' failure to permanently destroy Plaintiff's and other Illinois residents' biometric identifiers and biometric information resulted in Defendants' unlawful retention of their biometric identifiers and biometric information, thereby inflicting a concrete and particularized privacy injury separate and distinct from Defendants' unlawful collection, capture, and disclosure of their biometric identifiers and biometric information.

75.     BIPA also requires Defendants, as entities "in possession of biometric identifiers or biometric information" to "develop a written policy, made available to the public" that establishes "a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose has been satisfied or within 3 years of the individual's last interaction with private entity, whichever occurs first." 740 ILCS 14/15(a).

76.     Defendants also failed to develop a written policy, made available to the public, that establishes a retention schedule and guidelines for permanently destroying the biometric identifiers and/or biometric information of Plaintiff and other Illinois residents.

77.     Defendants chose to use biometric identifiers and information obtained from photographs that were of Illinois residents, created in Illinois, uploaded from computers and mobile devices in Illinois, by Illinois residents. In so doing, Defendants exposed Illinois residents to ongoing privacy risks in Illinois, knowing its conduct would injure those individuals in Illinois.

78.     Defendants knew (or had reason to know) that obtaining Illinois residents' biometric identifiers and biometric information in violation of BIPA would deprive those residents of their statutorily-protected information and privacy rights, affect their ability to control access to their biometric identifiers and biometric information, and expose them to potential surveillance and other privacy harms in Illinois. As such, Illinois has a direct interest in regulating the unlawful conduct alleged herein in order to protect the rights of its citizens and residents.

79.     Given the risks of biometric data collection and disclosure, public policy in Illinois expressly provides its residents and citizens with the right to control the fate of their unique biometric identifiers and information.

80.     Defendants' acts and omissions, including, but not limited to, their failure to provide the necessary disclosures and obtain the requisite consent, deprived Plaintiff and the Class members of this right.

81.     As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class have already sustained information and privacy injuries in Illinois and face additional impending injuries.

82.     Due to Defendants' illegal actions, Plaintiff's and the Class members' biometric identifiers and information are no longer under their control and are available to a range of unknown individuals, exposing Plaintiff and the Class to the imminent and impending injuries of identity theft, fraud, and other invasions of privacy.

## CLASS ALLEGATIONS

83.     Plaintiff brings this action on behalf of herself and all others similarly situated, as a member of a class, defined as follows (the "Class"):

> All individuals who were located in Illinois and whose biometric identifiers and/or biometric information were captured, collected, obtained, stored, used, disclosed, redisclosed, disseminated, transmitted, sold leased, traded, or profited from by Defendants within five years prior to the filing of this lawsuit through the date of class certification.

84.     Defendants, their employees and agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class's members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

85.     This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class's definition to seek

recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

86.     The Class is so numerous that the individual joinder of all of its members is impractical. While the exact number and identities of the Class members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class include thousands of members. Plaintiff alleges that the Class members may be ascertained by the records maintained by Defendants.

87.     This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class is so numerous that joinder of the Class members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

88.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.

89.     There are questions of law and fact common to the Class affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual members of the Class and include, but are not necessarily limited to, the following:

      a.    Whether Defendants collected, captured, received, otherwise obtained, stored, and/or used biometric identifiers and/or biometric information from Plaintiff and the Class members;

      b.    Whether Defendants first informed Plaintiff and the Class members in writing that they would be collecting, capturing, receiving, otherwise

obtaining, storing, and/or using their biometric identifiers and/or biometric information;

c.     Whether Defendants first informed Plaintiff and the Class members in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information would be collected, captured, received, otherwise obtained, stored, and/or used;

d.     Whether Defendants first obtained a written release from Plaintiff and the Class members before capturing, collecting, and/or otherwise obtaining their biometric information and/or biometric identifiers;

e.     Whether Defendants established a publicly available policy for retention of biometric identifiers and/or biometric information sufficient to satisfy 740 ILCS § 14/15(c);

f.     Whether Defendants disclosed, redisclosed, and/or disseminated the biometric identifiers and/or biometric information of Plaintiff and the Class members;

g.     Whether Defendants obtained the consent of Plaintiff and the Class members to disclose, redisclose, and/or disseminate their biometric information and/or biometric identifiers;

h.     Whether Defendants traded, sold, leased, and/or otherwise profited from their possession of the biometric identifiers and/or biometric information of Plaintiff and the Class members;

i.     Whether Defendants' conduct violates BIPA;

j.     Whether Defendants' conduct is negligent;

k.      Whether Defendants' violations of BIPA are intentional and/or reckless; and

l.      Whether Plaintiff and the Class members are entitled to damages and injunctive relief.

90.     As an individual who was located in Illinois and whose biometric identifiers and/or biometric information were captured, collected, obtained, stored, used, disclosed, redisclosed, disseminated, transmitted, sold leased, traded, or profited from by Defendants within five years prior to the filing of this lawsuit, Plaintiff is asserting claims that are typical of the Class.

91.     Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class.

92.     Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

93.     A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each Class member. Class treatment will also permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

Class-wide damages are essential to induce Defendant to comply with federal law. The interest of the Class members of in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

94. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

95. Notice may be provided to the Class members by direct mail and/or email notice, publication notice, and by other reasonable means.

96. Defendants have acted or refused to act in respects generally applicable to the Class, thereby making appropriate final and injunctive relief with regard to the members of Class as a whole.

97. The size and definition of the Class can be identified through Defendants' records and/or Defendants' agents' records.

98. Defendants failed to comply with the requirements of the BIPA, including, but not limited to, 740 ILCS 14/15(a) and 740 ILCS 14/15(b), as to the Class with respect to the above-alleged actions and omissions.

## COUNT I
## NEGLIGENT VIOLATIONS OF 740 ILCS 14/15(a)
## (ON BEHALF OF PLAINTIFF AND THE CLASS)

99. Plaintiff incorporates all of the allegations and statements made above as if reiterated herein.

100.    740 ILCS 14/15(a) requires Defendants to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first."

101.    Defendants systematically collected, obtained, stored, traded, transferred, sold, and/or used Plaintiff's and the Class members' biometric identifiers and/or biometric information without developing a written policy, made available to the public, and establishing a retention schedule and guidelines for permanently destroying biometric information, as required by 740 ILCS 14/15(a).

102.    By collecting, obtaining, storing, trading, transferring, selling, and/or using Plaintiff's and the Class members' biometric identifiers and/or biometric information without developing a written policy, made available to the public, and establishing a retention schedule and guidelines for permanently destroying biometric information, Defendants denied Plaintiff and the Class of their right to statutorily required information and right to say no, failed to protect their facial biometric data, and violated their rights to biometric privacy as set forth in BIPA.

103.    In violation of BIPA, Defendants did not permanently destroy Plaintiff's and the Class members' biometric identifiers and biometric information as required.

104.    By failing to destroy Plaintiff's and the Class members' biometric identifiers and biometric information, Defendants unlawfully retained their Biometrics.

105.    In so doing, Defendants deprived Plaintiff and the Class of their statutory right to maintain the privacy of and control over their biometric identifiers and biometric information.

106.    Each of these privacy violations harmed and injured Plaintiff and the other Class members.

107.    The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of BIPA, including, but not limited to, each and every one of the above cited provisions of 740 ILCS 14/15(a).

108.    As a result of Defendants' negligent violations of 740 ILCS 14/15(a), Plaintiff and the Class members are entitled to an award of $1,000.00 in statutory damages for each and every negligent violation, pursuant to 740 ILCS 14/20(1), plus reasonable attorneys' fees and costs.

109.    Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF – COUNT I

Wherefore, Plaintiff prays for a judgment against Defendants as follows:

a.      An order certifying the Class and appointing Plaintiff as Class Representative;

b.      An order certifying the undersigned counsel as Class Counsel;

c.      An order requiring Defendants, at their own cost, to notify all Class members of the unlawful conduct described herein;

d.      An order Declaring that Defendants violated BIPA's requirements and mandates, including 740 ILCS 14/15(a);

e.      Judgment against Defendants in the amount of $1,000.00 in statutory damages for each and every negligent violation of BIPA by Defendants;

f.     An order awarding injunctive and equitable relief prohibiting the unlawful conduct described herein by Defendants in the future and restraining Defendants' continued non-compliance with BIPA;

g.     Judgment against Defendants for Plaintiff's reasonable attorney's fees and costs, including expert witness fees and other litigation expenses; and

h.     Any other relief deemed just and proper by this Court.

## COUNT II
## INTENTIONAL AND/OR RECKLESS VIOLATIONS OF 740 ILCS 14/15(a)
## (ON BEHALF OF PLAINTIFF AND THE CLASS)

110.    Plaintiff incorporates all of the allegations and statements made above as if reiterated herein.

111.    740 ILCS 14/15(a) requires Defendants to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first."

112.    Defendants systematically collected, obtained, stored, traded, transferred, sold, and/or used Plaintiff's and the Class members' biometric identifiers and/or biometric information without developing a written policy, made available to the public, and establishing a retention schedule and guidelines for permanently destroying biometric information, as required by 740 ILCS 14/15(a).

113.    By collecting, obtaining, storing, trading, transferring, selling, and/or using Plaintiff's and the Class members' biometric identifiers and/or biometric information without developing a written policy, made available to the public, and establishing a retention schedule and

guidelines for permanently destroying biometric information, Defendants denied Plaintiff and the Class of their right to statutorily required information and right to say no, failed to protect their facial biometric data, and violated their rights to biometric privacy as set forth in BIPA.

114.    In violation of BIPA, Defendants did not permanently destroy Plaintiff's and the Class members' biometric identifiers and biometric information as required.

115.    By failing to destroy Plaintiff's and the Class members' biometric identifiers and biometric information, Defendants unlawfully retained their Biometrics.

116.    In so doing, Defendants deprived Plaintiff and the Class of their statutory right to maintain the privacy of and control over their biometric identifiers and biometric information.

117.    Each of these privacy violations harmed and injured Plaintiff and the other Class members.

118.    The foregoing acts and omissions of Defendants constitute numerous and multiple intentional and/or reckless violations of BIPA, including, but not limited to, each and every one of the above cited provisions of 740 ILCS 14/15(a).

119.    As a result of Defendants' intentional and/or reckless violations of 740 ILCS 14/15(a), Plaintiff and the Class members are entitled to an award of $5,000.00 in statutory damages for each and every intentional and/or reckless violation, pursuant to 740 ILCS 14/20(2), plus reasonable attorneys' fees and costs.

120.    Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### PRAYER FOR RELIEF – COUNT II

Wherefore, Plaintiff prays for a judgment against Defendants as follows:

a.    An order certifying the Class and appointing Plaintiff as Class Representative;

b.    An order certifying the undersigned counsel as Class Counsel;

c.    An order requiring Defendants, at their own cost, to notify all Class members of the unlawful conduct described herein;

d.    An order Declaring that Defendants violated BIPA's requirements and mandates, including 740 ILCS 14/15(a);

e.    Judgment against Defendants in the amount of $5,000.00 in statutory damages for each and every intentional and/or reckless violation of BIPA by Defendants;

f.    An order awarding injunctive and equitable relief prohibiting the unlawful conduct described herein by Defendants in the future and restraining Defendants' continued non-compliance with BIPA;

g.    Judgment against Defendants for Plaintiff's reasonable attorney's fees and costs, including expert witness fees and other litigation expenses; and

h.    Any other relief deemed just and proper by this Court.

**COUNT III**
**NEGLIGENT VIOLATIONS OF 740 ILCS 14/15(b)**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

121.    Plaintiff incorporates all of the allegations and statements made above as if reiterated herein.

122.    740 ILCS 14/15(b) provides that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first: (1) informs the subject…in writing that a biometric identifier

25

or biometric information is being collected or store; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information…"

123.  In violation of 740 ILCS 14/15(b)(1), Defendants systematically collected, captured, received, and/or otherwise obtained Plaintiff's and the Class members' biometric identifiers and biometric information without first informing Plaintiff and the Class members, or their legally authorized representatives, in writing that their biometric identifiers and biometric information were being collected and stored.

124.  In violation of 740 ILCS 14/15(b)(2), Defendants systematically collected, captured, received, and/or otherwise obtained Plaintiff's and the Class members' biometric identifiers and biometric information without first informing Plaintiff and the Class members, or their legally authorized representatives, in writing of the specific purpose and length of term for which the biometric identifiers and biometric information were being collected, stored, and used.

125.  In violation of 740 ILCS 14/15(b)(3), Defendants systematically collected, captured, received, and/or otherwise obtained Plaintiff's and the Class members' biometric identifiers and biometric information without first obtaining a written release from Plaintiff and the Class members, or their legally authorized representatives, as required by that provision.

126.  By capturing, collecting, and obtaining Plaintiff's and the Class members' biometric identifiers and biometric information as described herein, Defendants denied Plaintiff and the Class members of their right to statutorily required information and right to say no, failed to protect their facial biometric data, and violated their state rights to biometric privacy as set forth in BIPA.

127.    Each of these privacy violations harmed and injured Plaintiff and the other Class members.

128.    The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of BIPA, including, but not limited to, each and every one of the above cited provisions of 740 ILCS 14/15(b).

129.    As a result of Defendants' negligent violations of 740 ILCS 14/15(b), Plaintiff and the Class members are entitled to an award of $1,000.00 in statutory damages for each and every negligent violation, pursuant to 740 ILCS 14/20(1), plus reasonable attorneys' fees and costs.

130.    Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF – COUNT III

Wherefore, Plaintiff prays for a judgment against Defendants as follows:

a.      An order certifying the Class and appointing Plaintiff as Class Representative;

b.      An order certifying the undersigned counsel as Class Counsel;

c.      An order requiring Defendants, at their own cost, to notify all Class members of the unlawful conduct described herein;

d.      An order Declaring that Defendants violated BIPA's requirements and mandates, including separate violations of 740 ILCS 14/15(b)(1), (b)(2), and (b)(3);

e.      Judgment against Defendants in the amount of $1,000.00 in statutory damages for each and every negligent violation of BIPA by Defendants;

f.       An order awarding injunctive and equitable relief prohibiting the unlawful conduct described herein by Defendants in the future and restraining Defendants' continued non-compliance with BIPA;

g.       Judgment against Defendants for Plaintiff's reasonable attorney's fees and costs, including expert witness fees and other litigation expenses; and\

h.       Any other relief deemed just and proper by this Court.

### COUNT IV
### INTENTIONAL AND/OR RECKLESS VIOLATIONS OF 740 ILCS 14/15(b)
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

131.    Plaintiff incorporates all of the allegations and statements made above as if reiterated herein.

132.    740 ILCS 14/15(b) provides that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or store; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information…"

133.    In violation of 740 ILCS 14/15(b)(1), Defendants systematically collected, captured, received, and/or otherwise obtained Plaintiff's and the Class members' biometric identifiers and biometric information without first informing Plaintiff and the Class members, or their legally authorized representatives, in writing that their biometric identifiers and biometric information were being collected and stored.

134.    In violation of 740 ILCS 14/15(b)(2), Defendants systematically collected, captured, received, and/or otherwise obtained Plaintiff's and the Class members' biometric identifiers and biometric information without first informing Plaintiff and the Class members, or their legally authorized representatives, in writing of the specific purpose and length of term for which the biometric identifiers and biometric information were being collected, stored, and used.

135.    In violation of 740 ILCS 14/15(b)(3), Defendants systematically collected, captured, received, and/or otherwise obtained Plaintiff's and the Class members' biometric identifiers and biometric information without first obtaining a written release from Plaintiff and the Class members, or their legally authorized representatives, as required by that provision.

136.    By capturing, collecting, and obtaining Plaintiff's and the Class members' biometric identifiers and biometric information as described herein, Defendants denied Plaintiff and the Class members of their right to statutorily required information and right to say no, failed to protect their facial biometric data, and violated their state rights to biometric privacy as set forth in BIPA.

137.    Each of these privacy violations harmed and injured Plaintiff and the other Class members.

138.    The foregoing acts and omissions of Defendants constitute numerous and multiple intentional and/or reckless violations of BIPA, including, but not limited to, each and every one of the above cited provisions of 740 ILCS 14/15(b).

139.    As a result of Defendants' intentional and/or reckless violations of 740 ILCS 14/15(b), Plaintiff and the Class members are entitled to an award of $5,000.00 in statutory damages for each and every intentional and/or reckless violation, pursuant to 740 ILCS 14/20(2), plus reasonable attorneys' fees and costs.

140.     Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## **PRAYER FOR RELIEF – COUNT IV**

Wherefore, Plaintiff prays for a judgment against Defendants as follows:

a.     An order certifying the Class and appointing Plaintiff as Class Representative;

b.     An order certifying the undersigned counsel as Class Counsel;

c.     An order requiring Defendants, at their own cost, to notify all Class members of the unlawful conduct described herein;

d.     An order Declaring that Defendants violated BIPA's requirements and mandates, including separate violations of 740 ILCS 14/15(b)(1), (b)(2), and (b)(3);

e.     Judgment against Defendants in the amount of $5,000.00 in statutory damages for each and every intentional and/or reckless violation of BIPA by Defendants;

f.     An order awarding injunctive and equitable relief prohibiting the unlawful conduct described herein by Defendants in the future and restraining Defendants' continued non-compliance with BIPA;

g.     Judgment against Defendants for Plaintiff's reasonable attorney's fees and costs, including expert witness fees and other litigation expenses; and

h.     Any other relief deemed just and proper by this Court.

## COUNT V
## NEGLIGENT VIOLATIONS OF 740 ILCS 14/15(c)
## (ON BEHALF OF PLAINTIFF AND THE CLASS)

141.    Plaintiff incorporates all of the allegations and statements made above as if reiterated herein.

142.    740 ILCS 14/15(c) provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or customer's biometric identifier or biometric information."

143.    In violation of 740 ILCS 14/15(c), Defendants sold, traded, and/or otherwise profited from their possession of Plaintiff and Class members' biometric information and biometric identifiers.

144.    Plaintiff and the Class members did not consent to Defendants disclosing, redisclosing, or otherwise disseminating their biometric identifiers and biometric information, nor did their legally authorized representatives.

145.    The disclosure or redisclosure of Plaintiff's and the Class members' biometric identifiers and biometric information was not to complete a financial transaction they, or their legally-authorized representatives, requested or authorized.

146.    The disclosure or redisclosure of Plaintiff's and the Class members' biometric identifiers and biometric information was not required by State or federal law or municipal ordinance.

147.    The disclosure of Plaintiff's and the Class members' biometric identifiers and biometric information was not required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

148.   Defendants violated BIPA by disclosing, redisclosing, and/or otherwise disseminating Plaintiff's and the Class members' biometric identifiers and biometric information without first obtaining prior informed consent from each of them.

149.   In so doing, Defendants deprived Plaintiff and the Class of their statutory right to maintain the privacy of and control over their biometric identifiers and biometric information.

150.   The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of BIPA, including, but not limited to, each and every one of the above cited provisions of 740 ILCS 14/15(c) and (d).

151.   As a result of Defendants' negligent violations of 740 ILCS 14/15(c) and (d), Plaintiff and the Class members are entitled to an award of $1,000.00 in statutory damages for each and every negligent violation, pursuant to 740 ILCS 14/20(1), plus reasonable attorneys' fees and costs.

152.   Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## **PRAYER FOR RELIEF – COUNT V**

Wherefore, Plaintiff prays for a judgment against Defendants as follows:

a.   An order certifying the Class and appointing Plaintiff as Class Representative;

b.   An order certifying the undersigned counsel as Class Counsel;

c.   An order requiring Defendants, at their own cost, to notify all Class members of the unlawful conduct described herein;

d.   An order Declaring that Defendants violated BIPA's requirements and mandates, including 740 ILCS 14/15(c) and (d);

e.  Judgment against Defendants in the amount of $1,000.00 in statutory damages for each and every negligent violation of BIPA by Defendants;

f.  An order awarding injunctive and equitable relief prohibiting the unlawful conduct described herein by Defendants in the future and restraining Defendants' continued non-compliance with BIPA;

g.  Judgment against Defendants for Plaintiff's reasonable attorney's fees and costs, including expert witness fees and other litigation expenses; and

h.  Any other relief deemed just and proper by this Court.

## COUNT VI
## INTENTIONAL AND/OR RECKLESS VIOLATIONS OF 740 ILCS 14/15(c)
## (ON BEHALF OF PLAINTIFF AND THE CLASS)

153.  Plaintiff incorporates all of the allegations and statements made above as if reiterated herein.

154.  740 ILCS 14/15(c) provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or customer's biometric identifier or biometric information."

155.  In violation of 740 ILCS 14/15(c), Defendants sold, traded, and/or otherwise profited from their possession of Plaintiff and Class members' biometric information and biometric identifiers.

156.  Plaintiff and the Class members did not consent to Defendants disclosing, redisclosing, or otherwise disseminating their biometric identifiers and biometric information, nor did their legally authorized representatives.

157.    The disclosure or redisclosure of Plaintiff's and the Class members' biometric identifiers and biometric information was not to complete a financial transaction they, or their legally-authorized representatives, requested or authorized.

158.    The disclosure or redisclosure of Plaintiff's and the Class members' biometric identifiers and biometric information was not required by State or federal law or municipal ordinance.

159.    The disclosure of Plaintiff's and the Class members' biometric identifiers and biometric information was not required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

160.    Defendants violated BIPA by disclosing, redisclosing, and/or otherwise disseminating Plaintiff's and the Class members' biometric identifiers and biometric information without first obtaining prior informed consent from each of them.

161.    In so doing, Defendants deprived Plaintiff and the Class of their statutory right to maintain the privacy of and control over their biometric identifiers and biometric information.

162.    The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of BIPA, including, but not limited to, each and every one of the above cited provisions of 740 ILCS 14/15(c) and (d).

163.    As a result of Defendants' intentional and/or reckless violations of 740 ILCS 14/15(c) and (d), Plaintiff and the Class members are entitled to an award of $5,000.00 in statutory damages for each and every intentional and/or reckless violation, pursuant to 740 ILCS 14/20(2), plus reasonable attorneys' fees and costs.

164.    Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## **PRAYER FOR RELIEF – COUNT VI**

Wherefore, Plaintiff prays for a judgment against Defendants as follows:

      a.      An order certifying the Class and appointing Plaintiff as Class Representative;

      b.      An order certifying the undersigned counsel as Class Counsel;

      c.      An order requiring Defendants, at their own cost, to notify all Class members of the unlawful conduct described herein;

      d.      An order Declaring that Defendants violated BIPA's requirements and mandates, including 740 ILCS 14/15(c) and (d);

      e.      Judgment against Defendants in the amount of $5,000.00 in statutory damages for each and every intentional and/or reckless violation of BIPA by Defendants;

      f.      An order awarding injunctive and equitable relief prohibiting the unlawful conduct described herein by Defendants in the future and restraining Defendants' continued non-compliance with BIPA;

      g.      Judgment against Defendants for Plaintiff's reasonable attorney's fees and costs, including expert witness fees and other litigation expenses; and

      h.      Any other relief deemed just and proper by this Court.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues in this action so triable.

RESPECFULLY SUBMITTED,

JENNIFER CONIDI

By:    /s/ David B. Levin
        Attorney for Plaintiff
        Law Offices of Todd M. Friedman, P.C.
        707 Skokie Blvd., Suite 600
        Northbrook, IL 60062
        Phone: (224) 218-0882
        Fax: (866) 633-0228
        dlevin@toddflaw.com


        /s/ Todd M. Friedman
        Attorney for Plaintiff
        Law Offices of Todd M. Friedman, P.C.
        21031 Ventura Blvd., Suite 340
        Woodland Hills, CA 91364
        Phone: (323) 306-4234
        Fax: (866) 633-0228
        tfriedman@toddflaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on June 13, 2023, a copy of the foregoing First Amended Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

<u>/s/ David B. Levin</u>
Attorney for Plaintiff